Argued and submitted March 10, affirmed April 14, 2010

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# RYAN LAWRENCE ANTHONY,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0700610; A136945

228 P3d 1222

———

Laura Graser argued the cause and filed the brief for appellant.

Jennifer S. Lloyd, Attorney-in-Charge, Criminal Appeals, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Janet A. Metcalf, Assistant Attorney General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant appeals a judgment convicting him of aggravated murder and felony murder based on acts committed in 1980.[1] Although the murders at issue occurred in 1980, defendant was not charged until 2006. On appeal, he contends that the trial court erred in "denying [his] demurrer to the four counts of aggravated murder, as the statute of limitations had run before [he] was charged." In his second assignment of error, defendant asserts that the trial court erred "when it prohibited [him] from offering the hearsay statements of [a third party] confessing" to the murders at issue. Defendant asserts that, although that individual was present and testified during a pretrial hearing, he should have been treated as unavailable and his statements admitted pursuant to OEC 804(3)(c) as statements against penal interest because his testimony was evasive (in defendant's words, "he weaseled"). We affirm.

■     According to defendant, in 1980, when the murders at issue were committed, the statute of limitations for aggravated murder was three years. The state responds that the statute of limitations for murder, including aggravated murder, is and has always been unlimited.

In 1980, ORS 131.125[2] provided, in part:

"(1)   A prosecution for murder or manslaughter may be commenced at any time after the death of the person killed.

"(2)   Except as otherwise provided in subsection (3) of this section or as otherwise expressly provided by law, prosecutions for other offenses must be commenced within the following periods of limitations after their commission:

"(a)   For any felony, three years.

"(b)   For any misdemeanor, two years.

"(c)   For a violation, six months."

---

[1] Defendant was convicted of four counts of aggravated murder and two counts of felony murder. The felony murder convictions merged with two aggravated murder convictions.

[2] Because defendant's crimes were committed in 1980, we refer to the 1979 version of the statutes unless otherwise noted.

According to defendant, aggravated murder is not "murder" as that term was used in ORS 131.125(1). Thus, he urges, the three-year statute of limitations for other felonies should have been applied to preclude prosecution in his case. Based on our review of the applicable statutory provisions, the context, and the legislative history, *see State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), we disagree.

As set forth above, a prosecution for "murder or manslaughter" could have been commenced at any time. ORS 163.095 provided that " 'aggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by," one or more of the listed circumstances. ORS 163.115, in turn, defined murder. Thus, it is clear that the legislature intended aggravated murder to be merely a form of murder.[3] To fall within the statutory definition of aggravated murder, the crime had to meet the requirements of ORS 163.115 *and* be accompanied by any of the aggravating circumstances listed in the aggravated murder statute.

That ORS 131.125(1) listed only the broader term "murder" and did not specifically reference "aggravated murder" at the time defendant's crimes were committed is of no

---

[3] We note that, for some purposes, murder does not include aggravated murder. In *State v. Moore*, 324 Or 396, 927 P2d 1073 (1996), the Supreme Court addressed whether, under a later version of the statutes than that at issue in this case, the affirmative defense of extreme emotional distress provided for in ORS 163.135(1) applies to aggravated murder. According to the text of that statute, "EED is an affirmative defense *only* to a crime of murder, *as that crime is defined by ORS 163.115(1)(a)*, that is, homicide committed intentionally." *Moore*, 324 Or at 412 (emphasis in original). In light of the statutory text, the court in *Moore* concluded:

"EED does not apply to felony murder, defined by ORS 163.115(1)(b), or murder by abuse, defined by ORS 163.115(1)(c). Likewise, under the wording of ORS 163.135(1), it also does not apply to 'any other crime.' Consequently, EED is not an affirmative defense to aggravated murder under ORS 163.095(1)(d)."

*Id.*

The holding in *Moore* supports our conclusion that "murder," as used in the statute at issue in this case, includes aggravated murder. That is so because the phrase that the legislature employed in ORS 163.135(1), as set forth in *Moore*, to describe a limited form of murder that does not include aggravated murder was "murder for the purposes of ORS 163.115(1)(a)." That distinction shows that, when the legislature intends to refer to only nonaggravated murder, it knows how to do so. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 614, 859 P2d 1143 (1993) ("The legislature knows how to include qualifying language in a statute when it wants to do so."). In the relevant version of ORS 131.125 it did not; it instead used the unadorned term, "murder."

import. Indeed, as the state correctly points out, the unlimited statute of limitations for murder has been in effect, in virtually the same language, since the time of the Deady Code. General Laws of Oregon, Crim Code, ch II, § 9, p 442 (Deady 1845-1864) ("The time for commencement of criminal actions shall be as follows: 1. For murder or manslaughter, at any time after the death of the person killed[.]"). At that time, the code provided for first- and second-degree murder, *see id.* at ch XLIII, §§ 502-505, pp 527-28, but, like at the time of defendant's crimes, the statute of limitations referred only generally to "murder."

In short, in light of the text of the relevant statutory provisions in context, as well as their history, we conclude that the legislature clearly intended an unlimited statute of limitations to apply to aggravated murder. The trial court did not err in so concluding.

▮     In his second assignment of error, defendant argues that the court erred in excluding a hearsay statement from a third party allegedly confessing to the crime for which defendant was convicted. Defendant relies on OEC 804(3)(c). That provision allows admission of such statements if (1) the declarant is unavailable, (2) the statement is so inculpatory that a reasonable person in the position of the declarant would not have made the statement unless it was true, *and* (3) corroborating circumstances clearly establish that the statement is trustworthy. *State v. Schutte*, 146 Or App 97, 101, 932 P2d 77 (1997). We reject without discussion defendant's argument that, because the witness's testimony was evasive, he was unavailable for purposes of OEC 804(3)(c).

Nonetheless, in a recent case, we held that, where "the corroboration/'trustworthiness' requirement for admission of statements against penal interest" is met, exclusion as hearsay evidence of a confession merely because the confessing witness is not "unavailable" can, in some circumstances, violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State v. Cazares-Mendez*, 233 Or App 310, 323, 227 P3d 172 (2010). Satisfaction of the corroboration requirement, then, remains a predicate to considering whether hearsay evidence of a confession must be admitted on due process grounds. In the

same case, we observed that, whether the corroboration requirement has been satisfied depends on the individual circumstances of each case. *Id.* at 324. Although we held in *Cazares-Mendez* that the circumstances there were sufficiently clear to establish the trustworthiness of the hearsay confession so as to justify a due process inquiry, we reach a different conclusion here.

In brief, the corroboration in *Cazares-Mendez* consisted of *multiple* witnesses who had heard *detailed* confessions that "related *particulars* that were *peculiar* to" the crime that defendant allegedly committed. *Id.* at 326 (emphasis added). Here, the "corroboration" consisted of the following details: an uninvolved witness saw an unidentified man in the doorway of the victims' house on the night after the murder; the same witness saw two motorcycles outside the victims' home, and the witness who confessed owned a motorcycle; and a different witness saw "two ominous-looking men" walking toward the victims' home on the night of the murder. That evidence is a far cry from what the defendant presented in *Cazares-Mendez*. In light of the circumstances presented, the trial court did not err in excluding the hearsay confession in this case.

Affirmed.